HENRY S. PENCE and SARAH, his wife, administrators of the estate of CATHERINE DUCKWORTH, deceased,

*v.*

HIRAM FORCE.

An illiterate woman, for some years, was an inmate of an insane asylum. At the time she was discharged therefrom her husband was living in adultery with another woman, and instead of taking his wife to his house, arranged with her brother to pay him for her maintenance at the brother's house. When the husband died, seven years later, the brother became administrator of his estate, and, upon the distribution of the estate, retained in his hands a

considerable sum of money to which his sister was entitled. Upon the partition and sale of some real estate which had belonged to the husband, the sister became entitled to other moneys, which her brother also collected and retained. Every known transaction touching her moneys was thereafter conducted by her brother. He kept no memoranda or account of such transactions, and now has no vouchers for any payments made to his sister. After the sister's death, when he was questioned with reference to her moneys, he replied evasively and equivocated, and when, subsequently, he was sued, for the first time produced three notes, made by him in favor of his sister, in the aggregate for a sum nearly equal to the sister's moneys which had come to his hands, and by his answer claimed that he had borrowed his sister's moneys to that amount and had given her his notes, and that afterwards she had surrendered the notes to him upon an agreement by which he undertook to support her for her life, and bury her at her death. The notes were in themselves of suspicious character; no evidence was offered to show that they had ever been fairly issued and delivered to the sister, or to prove the alleged agreement upon her pretended surrender of them.—*Held*, that under the proofs the defendant's possession of his own notes drawn to his sister is without probative force. Also, that he will be held as trustee of his sister's property, and, as such, must account.

On bill, answer, replication and proofs.

*Mr. Oscar Jeffery*, for the complainants.

*Mr. John H. Munn* and *Mr. Richard S. Kuhl*, for the defendant.

THE CHANCELLOR.

Catherine Duckworth, the widow of George Duckworth, and a sister of the defendant, died in September, 1886, at the defendant's house, in Hunterdon county. The complainant, Sarah Pence, and John Duckworth, are her only children and next of kin. For some years prior to 1860 she was a patient in the state asylum for the insane at Trenton. Some time in 1860 she was discharged from that institution, and immediately went to live with the defendant, and thereafter continued to reside with him until she died. This residence was had at the instance of her husband, who, having installed another woman in her place at his home, would not take her back there. The husband agreed with the defendant to pay for his wife's maintenance, and, in pursuance of the arrangement made between them, did

actually pay him $1.50 for each week, until November, 1865, after which time the price was reduced, by mutual consent, to $1 per week, and that sum was paid till the death of the husband, in December, 1867.

During her sojourn in the defendant's house, and until her death, Mrs. Duckworth assisted in the housework, and made herself so useful that the defendant admits that $1 a week was a sufficient charge for her maintenance.

When George Duckworth died, the defendant became the administrator of his estate.

In January, 1868, he allowed Mrs. Duckworth, as widow, to select from her husband's property, for the use of the family, chattels valued at $102, including a cow appraised at $50, and removed them to his residence. In September of the same year, his account as administrator having been settled, he paid to each of George Duckworth's two children one-fourth of $540.82, the residue of their father's estate, which remained in his hands for distribution; that is, $135.20 to each, and retained one-half of the residue, $270.41, which he now claims to have paid to the widow. Subsequently, in January, 1872, his attention was called to the fact that each of the next of kin should have been paid one-third, instead of one-fourth, of the residue, and he thereupon, to make up the deficiency in his former payment, paid to each of them $51.57, with interest.

Upon proceedings for the partition of George Duckworth's farm among his heirs at law the lands were sold, and the widow accepted a gross sum for the value of her dower. This sum amounted to $768.44, and, by the widow's order, in writing, which she signed by a mark, was paid to the defendant.

The complainants, as administrator and administratrix of the estate of Catherine Duckworth, now seek to establish that the chattels selected by the widow, her distributive share of her husband's estate, and the gross sum allowed for her dower, came to the defendant's hands, and to charge him with the same as trustee for Catherine Duckworth, and have him account for them.

The bill asks for answer without oath.

By his answer, the defendant substantially admits the facts above stated, alleging, however, that the chattels were delivered to Catherine Duckworth, and that she was paid her distributive share of her husband's estate, and, as well, the moneys which were paid for her dower, and denying that he ever received or held any moneys whatever as trustee for her.

He also, in his answer, claims that on December 15th, 1869, he borrowed from Mrs. Duckworth $300, for which he gave her his promissory note, payable in three months, and that in January, 1870, he borrowed from her the further sum of $250, and in April of the same year the still further sum of $300, giving for each of those sums his note, payable, with interest, in one year. The answer still further alleges that Mrs. Duckworth held the three notes until 1873, when she entered into an arrangement with the defendant, that if he would support her during the remainder of her life, and suitably bury her body after her death, she would surrender and give up the three notes to him, and that, upon his acquiescing in the proposed arrangement, she gave him the notes, and that since such surrender he has fully performed the agreement thus made with her, and now is entitled to retain the notes and the moneys which they represent.

The answer, though sworn to, is not evidence in this cause, even to the extent to which it is responsive to the allegations of the bill, for, as has been stated, the bill prays that the defendant may answer without oath. *Rev. p. 108 § 23; Hyer* v. *Little, 5 C. E. Gr. 443; Sweet* v. *Parker, 7 C. E. Gr. 453.* Its admissions, however, bind the defendant.

The proofs show that the defendant surrendered to the complainants all that remained of the chattels that Mrs. Duckworth selected from her husband's estate, and that when surrendered they were not worth more than $5; so valueless, indeed, that they were not appraised. He exchanged the cow for another, and, after several similar exchanges, sold the cow last taken in exchange for $60, representing that he was acting in the sale for his sister, Mrs. Duckworth.

The defendant admits the amount of Mrs. Duckworth's distributive share of her husband's estate which was in his hands, but he fails to establish that it was paid over to her. Although formal receipts and releases to him from the next of kin for their shares were produced, none from the widow was exhibited. A release and receipt, under seal, to the special master in the partition case, for the $768.44 allowed for the widow's dower, is offered in evidence. Upon the back of the release is endorsed an order to the master to pay the $768.44 to the defendant. The release and order are signed with Catherine Duck-worth's mark, in the presence of a master of this court, who took her acknowledgment to the release and witnessed both instruments.

By his answer, the defendant, in substance, says, that he may have had this money, but, if he did have it, it was only for the purpose of transferring it to his sister.

John Duckworth testified that, in November, 1886, after the death of his mother, the defendant told him that he had drawn the widow's thirds out, and there was something off. Though the defendant was sworn, he did not contradict this testimony.

Thus the moneys were all traced to the defendant's hands.

Allowing for payments to lawyers which the defendant mentions, amounting to $40 or $50, the net amount that came to his hands for his sister was about $1,050. The proofs show that after the collection of the moneys the defendant dealt with them for his sister. It is not only shown that he exchanged her cow, and ultimately sold the cow taken in exchange and received the money for it, but, also, that he loaned upwards of $100 of her moneys to one Terriberry, taking Terriberry's note in her name, and years later, in 1879, after Terriberry had assigned for the benefit of his creditors, received a dividend made to Mrs. Duckworth, receipting for it, "Hiram Force for Catherine Duckworth." No other dealing with the property by any one is shown.

The case presented by the complainant's proofs, then, exhibits, in the first place, a woman so illiterate that she could not write her name, who had been shut out from the world as a patient in

an asylum for the insane for years, and who, after those years, being abandoned by her husband and children, became an inmate of her brother's household ; then, that that woman suddenly became entitled (for her) to a large sum of money, in the collection, control and management of which she appears to have taken no part, save to make a mark, by which she clothed the brother, in whose household she resided, with power to collect a large portion of it. And, later, that the brother who had been thus empowered, conducted every known dealing with her property without keeping memoranda or taking vouchers, by which it might be shown that he ever accounted for his collections or in what capacity he assumed the management of his sister's estate.

I cannot resist the conclusion that, in such a case, unless the defendant can show that the relation does not exist, he should be charged as trustee.

In the effort to show that he should not be so charged, the defendant has labored under the disability of not being admissible as a witness to testify to any transactions with his sister, or to any statements made by her, because the complainants sue in a representative capacity, and were not sworn. *McCartin* v. *McCartin, 18 Stew. Eq. 265.* His main reliance is upon the probative force of his possession of the three promissory notes referred to in his answer, his insistment being, that that possession shows, not only that his trusteeship, if any, which had previously existed was terminated, but also that the relation of debtor and creditor had been created between him and Mrs. Duckworth, and that that relation had also come to an end. He produced the notes, and by the testimony of members of his family proved that they had been in his possession for some years—kept in a desk to which Mrs. Duckworth might have had access if she had pleased. This is substantially the limit of his proofs. It is claimed for him that Mrs. Duckworth has received all her money, but he has failed to show the payment of it to her. He has not produced an account with her, nor a voucher taken from her, nor has he shown that at any time she was in possession of a considerable sum of money. Some very trifling expenditures by her have been given in

23

evidence, and it has been testified that a wardrobe in her room contained a drawer that could have been locked, and it is suggested that her money might have been kept there. When it is considered that the total receipts for her were, at best, little more than $1,050, and that of that sum Terriberry took more than $100, upon which his assignee paid a dividend in 1879, and that the defendant admits having $850, upon which he paid no interest after January, 1873, it must be concluded that her expenditures must have been small.

The three notes mentioned in the answer, though respectively dated December 15th, 1869, January 1st, 1870, and April 2d, 1870, are entirely in the defendant's handwriting, both upon their face and in their endorsements. They appear to have been written with the same ink and upon leaves from the same memorandum book. Each of them has three five-cent revenue stamps upon it, canceled by the initials "H. F.," and the date of the note written over them. The cancellation of the stamps upon the note of December 15th, 1869, conspicuously shows that in the date first written over them the year was put in the seventies and afterwards changed to sixty-nine, and it is insisted, and with considerable reason, that if the cancellation was written in December, 1869, the writer would not then be apt to write "1870," for it was then the end of a year when the habit of correctly writing the year had become fixed, and that, on the other hand, if the notes were all made at the same time for a purpose, and dated back, two in 1870 and one in 1869, by confusion, the mistake of a date in canceling the stamps might have occurred. The notes themselves at least present a suspicious appearance. And the suspicion that their appearance excites gathers strength from the defendant's attitudes when he was questioned with reference to Mrs. Duckworth's moneys by those who had interest in them. On the evening of election day, in November, 1886, John Duckworth spoke to him about Mrs. Duckworth's estate, asking if any of it was left for her children. The defendant says that he replied to this question, that when the bills for the funeral, tombstone &c. were paid there would not be anything, but Duckworth testifies that the answer was, that the defendant

·expected to get her a tombstone, and that what was left after that ·expenditure he should have for keeping her. Late in December, 1886, or early in January, 1887, the administrator, Henry S. Pence, and Horace Dodd met the defendant and his son on the road, where Pence questioned the defendant with reference to Mrs. Duckworth's estate. Dodd says that at this conversation the defendant said that there was money which he thought he was entitled to for keeping Mrs. Duckworth, but for Pence to ·wait a few days and they would see each other again. Of this ·conversation the defendant says, that when he was asked by Pence whether there was money, he replied merely, " Yes," and then stopped, saying nothing more. The defendant's son seeks to corroborate his father, but gives evidence of being so tractable a witness in the hands of the defence that implicit reliance in his statements would hardly be justifiable. Upon his direct examination he testified that the defendant told Pence " that there ·was some money." Upon cross-examination he swore that nothing was said about where the money was or how much it was. He remembered that his father said he would see Pence ·in a few days.

After an intermission for dinner, the re-examination of the ·witness in chief was resumed, when the following questions were put and answers had :

"*Q.* We understand you to say that Mr. Pence first asked your father if there was not some money, and your father replied there was. Please state the conversation at that point as it occurred.

"*A.* Yes; Mr. Pence spoke about the money, and father said there was some *at that time.*

"*Q.* Do you mean to be understood as saying that your father ·said there ·was money at the time of this conversation ?

"*A.* No, sir; I suppose he meant at the time he settled up the estate."

Later than the conversation on the road, Pence went with ·Samuel Reinhart to the defendant's house, and there, Reinhart says, the defendant told Pence that he had no money for him, ·and thereupon Pence said : " When I met you on the road a few ·days ago you told me that you thought you ought to have it for

keeping her," to which the defendant replied, " I don't remember telling you so."

If the witnesses, Duckworth and Dodd, are to be believed, the defendant's first position with reference to the money was that he had some, which he thought he was entitled to keep, because he had provided a home for Mrs. Duckworth. The defendant now contradicts them ; but it is to be remembered, that when he was charged by Pence, in the presence of Reinhart, with having made the statement in question, he did not decidedly deny it, but evasively said that he did not remember having made it. I am inclined to accept their testimony as true.

But if the defendant speaks the truth, when he was asked by the administrator if there was money, he said " Yes," and then stopped, and when asked the same question by John Duckworth, he intimated that, whatever the money was, it would all be exhausted by the funeral expenses and the cost of the tombstone, amounting to about $133. All the money he then had, according to his answer, was the $850, reduced by the payment of $102 to the next of kin of George Duckworth to rectify the mistake made in the distribution of the residue of their father's estate, represented by the three notes, and that money, by agreement, was his. Why did he not say so ? Why did he conceal the situation and mislead as to it ? It was not until his answer was filed that he assumed his present attitude with reference to the moneys in question.

Not only are the notes themselves of suspicious character, but their production follows equivocal position and lack of frankness and candor.

It also appears that Mrs. Duckworth's chattels were not worth $5, and that at her death she had no cash in her possession or moneys belonging to her save the moneys represented by the notes produced by the defendant, yet within a year of her death, and more than twelve years after the alleged surrender of the notes, it is testified she told the defendant's son that she wanted the defendant and his children to have all that she had, and declared to the defendant's wife, while speaking of her money, that she wanted them who had given her a home

and taken care of her to have whatever she had, and to another witness, produced by the defendant, that she did not want her children to have any part of her property.

Such declarations suggest that she believed that she had property to be disposed of at her death, and to that extent militate against the theory that she had surrendered substantially everything to her brother for a life support.

The production of the notes from the defendant's possession, under the circumstances of this case, can neither establish that the relation of debtor and creditor existed between the defendant and Mrs. Duckworth, nor that such a relation was terminated by payment. To give such possession probative force, it should have been established that the notes had been fairly issued and delivered to Mrs. Duckworth. There is no competent proof that they were ever in possession of Mrs. Duckworth, or that she ever knew that they existed, and there is not the slightest evidence that Mrs. Duckworth ever agreed to surrender them to the defendant. Under such circumstances no inference can be drawn from the defendant's possession of them. *3 Rand. Com. Pap.* § *1475*.

On the other hand, the production of the notes, the testimony of the defendant and the statements of the answer abundantly establish that the defendant now has in his possession at least $748 of Mrs. Duckworth's money, which he had converted to his own use at the times when the notes are respectively dated.

The defendant's proofs, I think, not only fail to show that the defendant was not trustee, but they strengthen the inference to be drawn from the condition and situation of Mrs. Duckworth. I think that I am fully justified in holding the defendant as a trustee of Mrs. Duckworth's property, and in compelling him to account as such. If there had been any proof to support the alleged agreement, it is perceived, from the defendant's own statement, that one dollar a week was a sufficient payment for his sister's maintenance, and that the bargain claimed was an unfair one, for the interest alone upon the moneys he had would make that payment.

Lindsley's Case.

The complainants are entitled to a decree that the defendant account for the moneys and property that came to his hands.. In the accounting he will be charged interest upon the amounts represented by the three notes from the dates of the notes respectively, and will be allowed one dollar for each week that he maintained Mrs. Duckworth after her husband's death, besides the moneys that he expended for her funeral and tombstone.